**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARK S. WILDER,**

      **Plaintiff,**        **CIVIL ACTION NO. 08-11399**

  **vs.**

                             **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:**     This Court recommends that Defendant's Motion for Summary Judgment (docket no. 12) be GRANTED, Plaintiff's Motion for Summary Judgment (docket no. 8) be DENIED, and the instant Complaint DISMISSED.

\*\*\*

**II.**     **PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on July 11, 2005, alleging that he had been disabled since March 11, 2005 due to a herniated disc at L4-L5 and S1. (TR 64-66, 92-93). The Social Security Administration denied benefits. (TR 49-53). A requested *de novo* hearing was held on August 16, 2006 before Administrative Law Judge (ALJ) Earl A. Witten who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time through the date

of the ALJ's January 25, 2007 decision[1]. (TR 23, 177). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 4-6). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff was fifty years old at the time of the administrative hearing. (TR 181). Plaintiff has a tenth grade education and past work experience as a welder. (TR 104, 182). Plaintiff lives with his wife in a one-story house. (TR 182).

Plaintiff underwent surgery on his lower back in December 2005. (TR 182). He testified that he believes the surgery made the pain worse because now the pain is constant instead of intermittent. (TR 182). Plaintiff described the pain as being down the right and left sides of his back. (TR 183). The surgery relieved some of the tingling on the left side, but did not provide as much relief on the right side. (TR 183). Plaintiff testified that he last saw his surgeon in February 2006. (TR 183). Plaintiff testified that he did not want any more injections to treat his pain. (TR 184). Plaintiff testified that he needs a knee replacement on the left side but that his doctor advised him to hold off as long as possible. (TR 184, 190-91). Plaintiff testified that he had not seen Dr. Schmidt, the doctor treating his knee, since June 2005. (TR 189).

Plaintiff testified that his wife does the grocery shopping and the housework. (TR 185).

---

[1] Claimant filed a prior application for Disability Insurance Benefits on October 21, 2002. (TR 37, 43). A hearing was held on January 13, 2005 before Administrative Law Judge Lawrence E. Blatnik who subsequently found that Plaintiff was not under a disability at any time through the date of the March 10, 2005 decision. (TR 37-43).

Plaintiff testified that he uses a riding lawnmower to mow the lawn and after a half-hour of work he takes a one to one and a half-hour break due to lower back pain. (TR 76, 185). Plaintiff visits friends once or twice a week, attends cook outs and campfires and drives about three times a week. (TR 80, 185, 187).

Plaintiff testified that he has difficulty sleeping at night and wakes up as a result of sharp pain. (TR 186). Plaintiff naps for one to two hours each day. (TR 186). He testified that he can sit for about thirty-five minutes before he has to stand and walk around, he can stand for about twenty minutes and he can walk for up to two blocks before his knees get sore. (TR 186-87). Plaintiff testified that the heaviest thing he can lift is a gallon of milk and if he tries to lift anything heavier, he has a sharp pain on his left side. (TR 186). In a Disability Report dated July 18, 2005 Plaintiff reported that he cannot lift over forty pounds and he is not supposed to twist, bend or squat. (TR 93). He stated that he has problems squatting because it is difficult to get back up and bending at the waist. (TR 187). He stated that he has problems pushing and pulling. (TR 187).

Plaintiff testified that he does not climb stairs because there are none in his environment. (TR 187). Plaintiff testified that he typically sits and lies around all day and he watches television. Benita Wilder completed a Function Report for Plaintiff dated July 31, 2005 in which Plaintiff reported that he is able to take car of his dog, do laundry and perform small household repairs. (TR 68-70). He reported that he is no longer able to ride his snowmobile or perform weed wacking activities. (TR 69-70).

### B. Medical Record

In March 1999 Michael P. Schmidt, D.O. performed surgery on Plaintiff's left knee, with a partial lateral meniscectomy. (TR 151). Notes from Douglas Strong, M.D., show that in January 2001 Plaintiff reported left knee pain that kept him awake at night. (TR 144). An MRI suggested

a new meniscal tear on the medial side. (TR 150). In May 2001 Dr. Schmidt performed an "arthroscopy of the left knee with chondroplasty medial lateral femoral condyle with partial meniscectomy." (TR 149). Plaintiff followed up with physical therapy. (TR 147). In August 2001 Dr. Schmidt examined Plaintiff and opined that an EMG of Plaintiff's right leg was normal. (TR 146, 161).

Plaintiff has a history of back pain resulting from lifting a snowmobile in February 2002. (TR 105-08, 125, 143). In March 2002 Plaintiff reported back pain and radicular pain and numbness down the back of both legs and ending at the bottom of his feet. (TR 125). A March 14, 2002 MRI revealed a small disc herniation of the right L5-S1. (TR 158). Plaintiff underwent physical therapy in May 2002 and reported his pain level at a five at best on a scale of ten, and a 7 at worst on a scale of ten. (TR 154).

On June 15, 2005 the treatment provider noted that Plaintiff had been prescribed Valium to address his lumbar spine pain, but that Plaintiff reported that the Valium did not provide significant relief. (TR 114). Plaintiff reported some relief with Medrol Dosepak and Darvocet. (TR 114). A June 22, 2005 MRI of the lumbar spine revealed degenerative disc disease with encroachment on L4-5 and L5-S1. (TR 113, 119-20). Denese Irish, PA-C, in agreement with Dr. Schmidt, opined that Plaintiff would continue with physical therapy, and would be evaluated at Lansing Neurological for possible surgery. (TR 113). Plaintiff was prescribed Darvocet. (TR 113). On June 23, 2005 Plaintiff was referred for physical therapy. (TR 109).

On July 29, 2005 Timothy M. Heilman, D.O., treated Plaintiff for his complaints of low back pain. (TR 127). Dr. Heilman diagnosed Plaintiff with a ruptured disc at L5-S1 and right S1 radiculopathy and referenced the 2002 MRI which revealed a ruptured disc at L5-S1 acentric to the right with significant lateral recess stenosis and neural foraminal narrowing. (TR 128-29, 140). Dr.

Heilman noted that Plaintiff was taking Vicodin and Darvocet. Dr. Heilman discussed a variety of treatment options with Plaintiff, from conservative therapy to surgery. (TR 129). On December 5, 2005 Plaintiff underwent a right L5-S1 lumbar microdiscectomy with Dr. Heilman. (TR 140-41).

After a one week postoperative examination on December 13, 2005 Dr. Heilman noted that Plaintiff continued to complaint of soreness in his posterior right hip and buttock and down the posterior aspect of the right thigh and into the right, however, Plaintiff reported that the pain was "somewhat improved compared to prior to surgery." (TR 139). Dr. Heilman noted that Plaintiff was free to increase his activity level as tolerated. (TR 139). On January 17, 2006, six weeks post surgery, Dr. Heilman noted that Plaintiff "continues to do well with complaints only of some postoperative low back pain. The patient has started to do some low back strengthening exercises and I suspect that as he progresses with this his back pain will improve." (TR 138).

### C. Vocational Expert

The Vocational Expert (VE) classified Plaintiff's past relevant work as a welder as unskilled and medium in exertion. (TR 194). The ALJ asked the VE to consider that Plaintiff had a residual functional capacity ("RFC") to perform work limited to lifting twenty pounds occasionally and ten pounds routinely, with the ability to sit or stand during an eight-hour shift, standing no more than two hours of an eight-hour day and able to sit at least six hours of an eight-hour day, without continuous sitting, limited to no more than occasional bending, twisting, or turning and no crawling, squatting, kneeling or climbing, no use of air or vibrating tools, no working at unprotected heights or around moving machinery and no requirement for overhead work. (TR 195). The VE testified that Plaintiff could not do his past relevant work. (TR 195).

The VE testified that there would be jobs available for such an individual with Plaintiff's age, education, past relevant work experience and the aforementioned restrictions. (TR 195).

Examples of available positions are sorter/folders (3,000 jobs in the lower peninsula of Michigan), cashiers (10,000 jobs in the lower peninsula of Michigan) and collators (5,000 jobs in the lower peninsula of Michigan). (TR 195). The VE affirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") except with respect to the sit stand option, which the DOT does not address. (TR 196). The VE testified to the titles of additional resource materials which he reviewed and stated that he also relied on his own 37 years of experience and professional expertise in the vocational area. (TR 196).

The ALJ also asked the VE to consider an individual with the RFC that Judge Blatnik found in his March 2005 decision, which includes the ability to lift twenty pounds occasionally and ten pounds frequently, stand and walk for two hours of an eight-hour work day, sit for six hours of an eight-hour work day, sit and stand at will, never climb ladders, scaffolds or ropes, only occasional climbing of ramps or stairs and occasional balancing, stooping, crouching, kneeling, crawling, twisting or turning at the waist and no bending. (TR 196). Additional restrictions were to avoid concentrated exposure to fumes, odors, dust gases and respiratory irritants, and allowing the use of a cane to ambulate distances of one hundred feet or more. (TR 196). The VE testified that the same jobs would be available. (TR 196). Finally, the VE affirmed that if Plaintiff's testimony with respect to his pain, discomfort and limitations was found to be entirely credible, it would preclude Plaintiff's ability to perform any of the jobs. (TR 197).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through the June 30, 2008, had not engaged in substantial gainful activity since March 11, 2005 and suffered from degenerative disc disease of the lumbar spine, status post microdiscectomy in December 2005, and degenerative joint disease, all severe impairments, he does not have an impairment or

combination of impairments that meets or equals the Listing of Impairments. (TR 19-20). The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible and although he could not perform his past work as a welder, he has the ability to perform a limited range of light work and there are a significant number of jobs in the economy which Plaintiff can perform. (TR 21-22). Therefore he is not suffering from a disability under the Social Security Act. (TR 23).

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly assess Plaintiff's credibility. Substantial evidence existed on the record

supporting the ALJ's conclusion that Plaintiff retained the RFC for a limited range of light work.

**C.     Analysis**

*1.     Whether The ALJ's Determination Of Plaintiff's Credibility Is Supported By Substantial Evidence*.

Plaintiff argues that the ALJ did not properly assess his credibility and testimony in light of the medical records. (Docket no. 8). The Plaintiff argues that due to this error, the ALJ did not form an accurate hypothetical question to the VE regarding Plaintiff's impairments. As an initial matter, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *See Drummond v. Comm'r of Social Sec'y*, 126 F.3d 837, 842 (6th Cir. 1997). Administrative Law Judge Blatnik found that Plaintiff had the RFC for a limited range of light work[2].

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not enough to make a conclusory

---

[2]Judge Blatnik determined that Plaintiff has the capacity to lift twenty pounds occasionally and ten pounds frequently, stand and walk for two hours of an eight-hour work day, sit for six hours of an eight-hour work day, sit and stand at will, never climb ladders, scaffolds or ropes, only occasionally climb ramps or stairs, balance, stoop, crouch, kneel or crawl, only occasionally twist or turn at the waist, no bending, and must avoid concentrated exposure to fumes, odors, dust, gases or respiratory irritants and requires the use of a cane to ambulate distances of 100 feet or more. (TR 42).

9

statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ considered all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

In making his credibility determination the ALJ stated that Plaintiff's testimony was not supported by the objective medical evidence. Plaintiff argues that his testimony that he cannot lift a gallon of milk is supported by a June 22, 2005 MRI which, he argues, shows that he had significant pathology in his lower back and on both sides. He argues that the MRI also supports his testimony that he has pain radiating into both lower extremities. (Docket no. 8). The June 2005 MRI showed degenerative disc disease at L4-L5 "with right lateral extrusion in proximity to the exiting right L4 nerve root possibly with local irritation" and "L5-S1 with moderate sized right paracentral focal extrusion with a free fragment of disk lying ventral to the exiting S1 nerve root resulting in compression of the S1 nerve. Mild encroachment on the left-sided nerve root is also suggested without compression and possible local irritation." (TR 119-20). The ALJ considered the June 2005 MRI and cited to its results in his decision. (TR 21).

The ALJ relied on a physical residual functional capacity assessment dated August 24, 2005.

(TR 22, 130-37). The August 2005 Assessment was performed by a state agency medical consultant and both the March 2002 MRI and the June 2005 MIR were considered and referenced in the assessment. (TR 131). The state agency consultant concluded that Plaintiff had the ability to lift up to twenty pounds occasionally, ten pounds frequently, stand and/or walk about six hours in an eight-hour work day, sit about six hours in an eight-hour work day and was unlimited in his ability to push and pull consistent with the lift and carry weight restrictions. (TR 131). Plaintiff had no environmental limitations but was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes and scaffolds. (TR 132-33). The consultant noted that Plaintiff performs light chores around the house, limited his lifting, bending and twisting to his pain tolerance and "is credible." (TR 135). The consultant's conclusions regarding Plaintiff's limitations are less restrictive than those adopted by the ALJ's RFC and Plaintiff has not shown any evidence in the record which contradicts these conclusions. Furthermore, the ALJ is not required to adopt the consultant's conclusion that Plaintiff "is credible." The record contains no evidence that Plaintiff's condition as revealed by the June 2005 MRI requires more restrictive limitations than those set forth in the ALJ's RFC.

The ALJ also cited to Dr. Heilman's report from July 29, 2005 in which incorporated Plaintiff's reports of radiating pain into the right hip and buttock, through the thigh and calf and ending in the lateral aspect of the right foot, with numbness and tingling paresthesias. (TR 127). Dr. Heilman reports that Plaintiff was taking Vicodin and Darvocet. (TR 127). Dr. Heilman noted that Plaintiff's gait was "normal" and he "requires no support for ambulation." (TR 128). Plaintiff's tandem gait was intact, but he had difficulty with heel walk and repeated toe lift on the right. (TR 128). Dr. Heilman noted that Plaintiff had full range of motion of his back. (TR 128). Dr. Heilman diagnosed Plaintiff with a ruptured disc at L5-S1 and right S1 radiculopathy. (TR 129).

The record does not contain evidence of exertional or non-exertional restrictions following the surgery. ALJ noted that one week after the December 2005 surgery Dr. Heilman reported that Plaintiff continued to complain of "some soreness in the posterior right hip and buttock as well as down the posterior aspect of the right thigh, into the posterior right leg" and that Plaintiff stated that this was "somewhat improved compared to prior to surgery." (TR 139). Dr. Heilman noted that Plaintiff denied any significant weakness in the lower extremities and that Plaintiff was "free to increase his activity level as tolerated." (TR 139). On January 17, 2006, approximately six weeks after the surgery, Dr. Heilman reported that Plaintiff continued "to do well" and had complaints of only "some" postoperative low back pain. (TR 138). Dr. Heilman noted that Plaintiff had started doing low back strengthening exercises and Dr. Heilman suspected "that as he progresses with this his back pain will improve." (TR 138).

The ALJ also considered and referenced Plaintiff's ability to perform activities of daily living and his social activities. The ALJ relied on both Plaintiff's reports and testimony that he can perform his personal hygiene tasks and activities of daily living, he visits friends and shops. (TR 21, 68-70, 76, 185, 187). He also performs small household repairs and yard work. (TR 21). The ALJ found these activities and the objective medical findings inconsistent with Plaintiff's allegations and testimony regarding his limitations. Furthermore, the record shows that Plaintiff indicated that he did not want injections to treat his pain and he had not treated with a doctor for his knee in over a year. (TR 184, 189). Based upon the foregoing, the Court concludes that substantial evidence supports the ALJ's credibility assessment.

Plaintiff also argues that the ALJ's determination that Plaintiff experienced increased back pain resulting in surgery but that the condition did not last twelve months is not supported by substantial evidence. Plaintiff did not otherwise brief this issue. The ALJ set forth evidence

12

showing that the time period from Plaintiff's complaints of increased back pain and discussions of treatment alternatives to the noted improvement following surgery was less than twelve months. (TR 21, 127-29, 138-39).  This finding is supported by substantial evidence and there is simply insufficient evidence to conclude otherwise.

Finally, Plaintiff argues that the hypothetical question to the VE was inaccurate.  In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so.  *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations. (TR 194-97).  The ALJ's decision that Plaintiff retained the RFC for a restricted range of light work is supported by substantial evidence and the ALJ properly relied on the VE's testimony to find that there are significant number of jobs available which Plaintiff can perform.

## VI.   CONCLUSION

The Commissioner's decision is supported by substantial evidence, was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise.  Accordingly, Defendant's Motion for Summary Judgment (docket no. 14) should be GRANTED, that of Plaintiff (docket no. 8) DENIED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 18, 2009            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: March 18, 2009             s/ Lisa C. Bartlett
                                  Courtroom Deputy

14